## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CHRISTOPHER JOHNSON and ANDREA
HODGES-JOHNSON,

      Plaintiffs,

             v.

CHANCE BELCHER, *et al.*,

      Defendants.

Civil Action No.
1:20-cv-03409-SDG

### <u>OPINION AND ORDER</u>

This case is before the Court on motions to dismiss by (1) Defendants Chris

Dusik, Vince DiFatta, Matt Legerme, Rob Kirschner, and Seung Suk (the Lilburn

Defendants) [ECF 14] and (2) Defendants Chance Belcher, Dwayne Black, Simon

Byun, Ashley Kessler, Brandon Mathews, "FNU" Pachoke,[1] and Brody Thomas

(the Suwanee Defendants) [ECF 17]. For the following reasons, Defendants'

motions are **GRANTED**.

---

[1]    "FNU" stands for "First Name Unknown." ECF 1-3 (Notice of Lawsuit).

I.      **Background**[2]

On October 22, 2019, multiple law enforcement agencies participated in the execution of a search warrant on Plaintiffs' home in Suwanee, Georgia.[3] Defendant Chance Belcher of the Suwanee Police Department obtained the search warrant based on his belief that child pornography or exploitation had been or was being committed at that location.[4] The warrant expressly limited detention of people on the premises to situations necessary for officer safety or to prevent the disposal or destruction of items described in the warrant.[5]

When law enforcement arrived at the home to execute the warrant, Plaintiff Christopher Johnson—himself a former law enforcement officer—immediately rushed out of the shower and opened the garage door.[6] Because of his haste, Johnson appeared in the garage wet, covered in soap, and entirely naked.[7] Despite

---

[2]   The Court treats Plaintiffs' well-pleaded allegations as true. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[3]   ECF 1, ¶¶ 5, 28.

[4]   *Id.* ¶ 15.

[5]   *Id.* ¶ 17.

[6]   *Id.* ¶¶ 2, 19.

[7]   *Id.* ¶ 19.

his protests about being unclothed, the officers demanded Johnson leave the house immediately.[8] Johnson complied, and was handcuffed with his hands behind his back in the middle of his driveway while in this state of undress.[9] Johnson was also questioned by officers during this time.[10] Johnson alleges that the officers refused to let him put on clothes or use any sort of covering "for a prolonged and unnecessary period of time."[11]

Shortly after Johnson was restrained, his wife, Plaintiff Andrea Hodges-Johnson, was also handcuffed. Hodges-Johnson was wearing a robe that fully covered her torso, arms, and legs.[12] At some point, Hodges-Johnson was instructed to sit on the tailgate of a patrol car.[13] Plaintiffs were handcuffed for approximately 20 minutes.[14] The person suspected of having committed the crimes being investigated was Plaintiffs' son, whom Hodges-Johnson confirmed to the officers

---

[8]   *Id.* ¶¶ 22–24.

[9]   *Id.*

[10]  *Id.* ¶ 40.

[11]  *Id.* ¶¶ 25–27.

[12]  *Id.* ¶ 29; ECF 5, Ex. B (Kirschner video).

[13]  ECF 1, ¶ 33.

[14]  *Id.* ¶ 34.

was away at college.[15] Plaintiffs contend that at no time were they suspected of having committed a crime, impeding the search, or concealing evidence, nor did either of them pose a flight risk or security threat.[16]

On August 17, 2020, Plaintiffs filed suit against Defendants in their individual capacities, asserting causes of action (1) under Section 1983 for violations of the Fourth Amendment;[17] (2) under state law for assault, battery, and false imprisonment;[18] (3) under state law for invasion of privacy;[19] (4) under the Georgia Constitution for the right to be free from unreasonable searches and seizures;[20] and (5) attorneys' fees and expenses of litigation under Section 1988.[21] Plaintiffs seek general, consequential, special, and punitive damages, as well as damages for pain and anguish.[22] The Lilburn Defendants moved to dismiss or for

---

[15]   *Id.* ¶ 41.

[16]   *Id.* ¶¶ 42–46.

[17]   *Id.*, First Cause of Action (right to be free from unreasonable seizure) & Second Cause of Action (right to be free from seizure in an unreasonable manner).

[18]   *Id.*, Third Cause of Action.

[19]   *Id.*, Fourth Cause of Action (intrusion upon seclusion and public disclosure of private facts).

[20]   *Id.*, Fifth Cause of Action.

[21]   *Id.*, Sixth Cause of Action.

[22]   *Id.* ¶ 85.

a more definite statement on October 15, 2020; the Suwanee Defendants moved to dismiss the following day.[23] Plaintiffs opposed both motions,[24] and each set of Defendants replied.[25]

## II.   Applicable legal standards

### A.   Motions to dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting

---

[23]   ECF 14 (Lilburn Defs.' Mot.); ECF 17 (Suwanee Defs.' Mot.). Although the Suwanee Defendants styled their motion as seeking dismissal solely, they alternatively ask that Plaintiffs be directed to file a more definite statement. *See generally* ECF 17, at 1; ECF 17-1, at 8.

[24]   ECF 22 (Opp. to Lilburn Defs.' Mot.); ECF 24 (Opp. to Suwanee's Defs.' Mot.).

[25]   ECF 25 (Lilburn Defs.' Reply); ECF 26 (Suwanee Defs.' Reply).

*Twombly*, 550 U.S. at 570). A complaint fails to state a claim when it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555–56 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Oxford Asset Mgmt. v. Jaharis*, 297 F.3d 1182, 1187–88 (11th Cir. 2002) (stating that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the Court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556).

## B.   Extrinsic evidence

Plaintiffs submitted with their Complaint videos from the execution of the search warrant.[26] The Lilburn Defendants attached to their motion to dismiss the search warrant and warrant application.[27] As a general rule, on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir.

---

[26]   ECF 5, Exs. A–C.

[27]   ECF 14-2.

2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint.").

The Eleventh Circuit, however, recognizes exceptions:

> First, conversion will not occur if the court properly takes judicial notice of attached exhibits. Second, a document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged.

*Adamson v. de Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citations omitted). *See also Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.") (citations omitted); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.") (citations omitted). Further, "[p]ublic records are among the permissible facts that a district court may consider" on a motion to dismiss. *Universal Express, Inc. v. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) (citations omitted).

This Court has discretion to consider the videos submitted by Plaintiffs in ruling on the motions to dismiss. In *Cantrell v. McClure*, another judge from this district considered allegations of excessive force on a motion for judgment on the pleadings. No. 2:17-cv-141-RWS, 2018 WL 11170098, at *1 (N.D. Ga. Mar. 12, 2018). Dash camera videos captured the incident between the plaintiff and the defendant officer. *Id.* The Court held that it was proper to consider the videos "in deciding the motion because [they] are referenced in Plaintiff's Complaint, their content is undisputed, and [they] are a matter of public record." *Id.* (citations omitted). The Court further explained that, if "the record includes a video which the parties concede is authentic and accurate . . . the court views 'allegations of the complaint as true only to the extent that they are not contradicted by video evidence.'" *Id.* (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)).

Here, there is no indication in the record that Defendants question the authenticity or accuracy of the videos.[28] Even if the videos were not physically attached to the Complaint, they are referred to in the Complaint and form a part of Plaintiffs' claims. Likewise, the warrant and warrant application attached to the Lilburn Defendants' motion to dismiss are public records, and Plaintiffs do not

---

[28] *See, e.g.*, ECF 14-1, at 6 n.2 (indicating Court may consider the videos on a motion to dismiss).

question their authenticity. They are also central to the allegations in the Complaint.[29] Accordingly, the Court considers them for purposes of ruling on the motions to dismiss.

## III.   Discussion

Because the arguments raised by each set of Defendants overlap, the Court addresses the issues topically. It does not reach Defendants' requests for a more definite statement because Plaintiffs' claims as currently pleaded do not survive.

### A.   Lack of specificity concerning each Defendant

The Lilburn Defendants argue that the Complaint does not specifically attribute any particular action to any one of them.[30] They contend that Plaintiffs must show a causal connection between each Defendant's acts and the alleged constitutional deprivation. Similarly, the Suwanee Defendants contend that the Complaint is a shotgun pleading because it fails to provide each Defendant with fair notice of the claims.[31]

---

[29]   *See, e.g.*, ECF 1, ¶¶ 5, 15–18, 41–46, 53, 61, 80.

[30]   ECF 14-1, at 4–7.

[31]   ECF 17-1, at 4–5.

The Lilburn Defendants also argue that the Complaint is a shotgun pleading. ECF 14, at 16–21.

Plaintiffs respond to the Lilburn Defendants by arguing that the Complaint satisfies the necessary pleading standards and is bolstered by the videos:

> [C]ontrary to what is alleged by the Defendants that the Complaint is not particularized as to each Defendant and what each Defendant contributed to the unlawful search and seizure, the actions of each [are] recorded live and in living color with audio.[32]

Since the "video footage details exactly what occurred at [Plaintiffs'] home," Plaintiffs contend they have satisfied Rules 8 and 10.[33] They further argue that each Defendant is responsible for the behavior of those who actually performed the unlawful search and seizure because Eleventh Circuit case law makes officers who are present at a scene liable for another officer's use of excessive force.[34] In response to the Suwanee Defendants' motion, Plaintiffs are far more dismissive, arguing that the Complaint in no way constitutes a shotgun pleading.[35] Plaintiffs

---

[32] ECF 22, at 9. *See generally id.* at 8–11.

[33] *Id.* at 9.

[34] *Id.*

[35] ECF 24, at 7, 10.

Plaintiffs' opposition brief reveals a level of unprofessionalism and lack of civility that this Court will not tolerate. Counsel are cautioned that future filings will be scrutinized carefully and sanctions may be imposed.

also retort that determining which Defendant did what is "to be sorted out in discovery."[36]

Plaintiffs are wrong.

### 1. The Complaint does not tie any individual Defendant to the alleged violations.

Officer Belcher is the only Defendant whose conduct is somewhat described with particularity in the Complaint. Even that is limited to claiming he "directed the unlawful execution of the warrant."[37] The videos make clear that every officer present was not involved in seizing Plaintiffs.[38] Some officers maintained a perimeter outside the house and were not involved at all in detaining either Plaintiff. At least five to six officers entered the house to secure it. Although several officers participated in the immediate seizure of Plaintiffs while they were standing in the garage, from the videos it appears that only one officer was actually involved in detaining and handcuffing Johnson. That officer informed Johnson that he would not require Johnson to remain naked, but that the officers would need to clear the house first.[39] The Complaint does not identify that officer by name

---

[36]   ECF 24, at 8–9.

[37]   ECF 1, ¶ 18.

[38]   ECF 5, Exs. B, C, D.

[39]   *Id.*, Ex. B. (Kirschner video).

or even by description. Different officers appeared to restrain Hodges-Johnson. Yet the Complaint alleges that all Defendants detained Johnson and refused to allow him any form of covering. Telling Defendants and the Court to go search for such crucial details in the videos is not a substitute for a proper pleading and does not cure Plaintiffs' failure to tie any factual allegations to any particular Defendant. Plaintiffs have made no effort to distinguish those officers who seized them from those who searched the house.

The Eleventh Circuit has clearly included within its well-known description of shotgun pleadings those that fail to specify which defendant committed which improper action. Shotgun pleadings include those "asserting multiple claims against multiple defendants *without specifying which of the defendants are responsible for which acts or omissions*, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted) (emphasis added).

Further, in *Magluta v. Samples*, a *Bivens* due-process action, the Eleventh Circuit upheld the dismissal for failure to state a claim of all claims against the remaining four defendants:

> [The complaint] name[d] fourteen defendants, and all defendants are charged in each count. The complaint is replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of.

256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Even more problematic for Plaintiffs here, the dismissal in *Magluta* was decided under the former, more permissive pleading standard of *Conley v. Gibson* rather than *Twombly* or *Iqbal*.

Likewise, in *O'Kelley v. Craig*, the Eleventh Circuit upheld the dismissal of Section 1983 claims based on alleged Fourth Amendment violations because the plaintiff had failed to "allege sufficient facts . . . to show that [two of the defendants] were personally involved in the acts that resulted in the alleged constitutional deprivations. 781 F. App'x 888, 895 (11th Cir. 2019) (per curiam). Section 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation"; the plaintiffs failed to plead this because they did not show how those two defendants were "personally involved in the acts that resulted in the constitutional

deprivation." *Id.* (quoting *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)). In the absence of allegations about how each Defendant participated in the alleged unreasonable seizure of Plaintiffs, the Complaint is insufficient. Whether this is characterized as a failure to comply with *Twombly* and *Iqbal*, Rules 8 and 10, or provisions against shotgun pleadings, is ultimately of no import. This problem affects all of Plaintiffs' claims, which are therefore subject to dismissal under Rule 12(b)(6) for failure to state a claim.

### 2.   Plaintiffs' arguments of a purported failure to intervene do not cure their defective pleading.

While it is the law in the Eleventh Circuit that "an officer who is present at [ ] a beating and fails to intervene may be held liable though he administered no blow," *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) (per curiam), this is not a theory alleged in the Complaint. Rather, the pleading contends that each Defendant was involved in every aspect of the asserted violations.[40] Plaintiffs reaffirm this position in their opposition to the Suwanee Defendants' motion.[41]

---

[40]   *See, e.g.*, ECF 1, ¶ 51 ("The Police Defendants committed the above described actions and/or omissions jointly . . . ."), ¶ 58 ("[T]he Police Defendants . . . directed, condoned, sanctioned and oversaw the physical restraint, confinement and seizure . . . .").

[41]   ECF 22, at 8–11.

Plaintiffs cite only one case that seems to extend the failure-to-intervene principal from use-of-excessive-force cases to an unreasonable search and seizure. In *Sampson v. Reed*, another judge in this district declined to grant summary judgment in favor of two officers based on qualified immunity. The plaintiff there asserted several officers performed an invasive strip search of him in a public parking lot outside of a mall.[42] The two officers contended they were not present at the scene, but the plaintiff presented evidence to the contrary.[43] This was sufficient to create a dispute of material fact. In a footnote, the opinion indicated that an officer who may not have directly participated in the strip search could still be found liable.[44] However, *Sampson* does not involve an instance where *no* Defendant is alleged to have engaged in any *specific* unconstitutional or illegal behavior. And Plaintiffs have pleaded no facts suggesting that officers who maintained a perimeter around the house or conducted the sweep inside the house had any ability or opportunity to intervene to provide Johnson clothing. In short, the Court does not find *Sampson* persuasive here and declines to extend the failure-

---

[42]   Order of Mar. 28, 2013, Civ. A. No. 1:12-cv-500-TWT, ECF 72 (N.D. Ga.).

[43]   *Id.* at 14–16.

[44]   *Id.* at 15 n.4 (citing *Velazquez*).

to-intervene theory to unreasonable search and seizure cases on the facts as currently pleaded here.

### B.    Constitutional claims

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 is not a source of rights. Rather, it is a method to vindicate existing federal rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). When a court considers a 1983 claim, it must identify the specific constitutional or federal right allegedly infringed. *Graham*, 490 U.S. at 393–94; *Baker*, 443 U.S. at 140. Here, Plaintiffs assert violations of their Fourth Amendment rights against (1) unreasonable search and (2) seizure in an unreasonable manner.

A person is "seized" within the meaning of the Fourth Amendment when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Plaintiffs allege they were

seized without reasonable cause and in an objectively unreasonable manner that exposed "their genitals and private body parts."[45] The Suwanee Defendants do not raise immunity defenses, arguing they lack "a clear statement of why [P]laintiffs are suing each [D]efendant and under what legal theories."[46] The Lilburn Defendants, however, make two distinct arguments with regard to Plaintiffs' Fourth Amendment claims. First, these Defendants assert that Plaintiffs' temporary detention during the execution of a valid search warrant did not violate the Constitution at all.[47] Second, the Lilburn Defendants contend they are entitled to qualified immunity because their conduct did not violate clearly established law.[48] Since the analysis of these two arguments involves related issues, the Court addresses them together.

### 1.    Qualified Immunity

Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[45]   ECF 1, ¶¶ 50, 58, 60.

[46]   ECF 17-1, at 8.

[47]   ECF 14-1, at 7–11.

[48]   *Id.* at 11–14.

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs' ability to pursue Section 1983 claims against Defendants in their individual capacities is limited by this immunity. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005).

Under this analysis, the burden is on the government official to show he was engaged in a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004). Then, "[t]o overcome the defense of qualified immunity, [a plaintiff] must show that the officers: (1) violated federal law (2) that was clearly established at the relevant time." *Pullen v. Osceola Cnty.*, No. 6:16-cv-00723, 2021 WL 2461828, at *4 (N.D. Ga. Jun. 17, 2021) (per curiam) (quoting *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998)). "[A] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* at *5 (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). *See also Mitchell v. Stewart*, 608 F. App'x 730, 734 (11th Cir. 2015) (per curiam)

(same). Here, there is no dispute that Defendants were exercising their discretionary authority in executing the warrant.

### 2.   Clearly established right

#### i.   Unreasonable seizure

During execution of the search warrant, Plaintiffs were clearly seized within the meaning of the Fourth Amendment: They were handcuffed, directed where to remain, and were not free to leave. *Michigan v. Summers*, 452 U.S. 692, 696 (1981) (concluding there had been a seizure under the Fourth Amendment where the defendant was detained and not free to leave during a search of his home); *Terry*, 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). However, the Supreme Court has noted that the seizure of an occupant of a home during the execution of a search warrant "represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Summers*, 452 U.S. at 703. The warrant itself "provides an objective justification for the detention" since it has been approved by a judicial officer. *Id.* Accordingly, the Supreme Court has held that

> a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Id.* at 705 (footnotes omitted).

In *Muehler v. Mena*, the Supreme Court emphasized the reasons why occupants of a home can be seized during execution of a search:

> [In *Summers,*] we posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: "preventing flight in the event that incriminating evidence is found"; "minimizing the risk of harm to the officers"; and facilitating "the orderly completion of the search," as detainees' "self-interest may induce them to open locked doors or locked containers to avoid the use of force."

544 U.S. 93, 98 (2005) (quoting *Summers,* 452 U.S. at 702–03) (concluding there was no constitutional violation when Mena was roused from her bed at gunpoint, handcuffed, and detained for two-to-three hours during execution of a search).

All of these were reasonable grounds to seize Plaintiffs during execution of the search here. Plaintiffs do not contend that the warrant was invalid, nor have they proffered any argument about how *the fact* of their seizure violated the Fourth Amendment. Nor could they in light of the Supreme Court case law—Plaintiffs' detention and brief period of being handcuffed (approximately 20 minutes) during execution of the search pursuant to a valid warrant was constitutionally permitted. When "officers execute a valid warrant and act in a reasonable manner to protect themselves from harm . . . the Fourth Amendment is not violated." *Los Angeles*

*Cnty., Cal. v. Rettele*, 550 U.S. 609, 616 (2007). Plaintiffs cannot establish they had a clear right not to be detained or handcuffed under these facts.

The Lilburn Defendants are therefore entitled to qualified immunity on Plaintiffs' First Cause of Action for unreasonable seizure.

### ii.    Unreasonable manner of seizure

The Eleventh Circuit has held that there is "a broad, clearly established principle that individuals who have been placed in police custody have a constitutional right to bodily privacy." *Mitchell*, 608 F. App'x at 734 (cleaned up). Thus, "***absent a legitimate reason***, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers." *Id.* at 735 (emphasis added).

### a.    Plaintiff Hodges-Johnson

Plaintiff Hodges-Johnson's 1983 claim for seizure in an unreasonable manner fails. The Complaint does not allege, and the videos do not show, that her genitals or any other private part of her body was exposed during her detention.[49] Hodges-Johnson has not pleaded any facts showing her constitutional right to bodily privacy was implicated. The manner of her seizure was not materially different than that in *Mena*, although Hodges-Johnson was detained outside of her

---

[49]    *See generally* ECF 1; ECF 5, Ex. B (Kirschner video).

home rather than in the garage. 544 U.S. at 97. Hodges-Johnson has therefore not stated a claim in her Second Cause of Action that she was seized in an unreasonable manner. The Lilburn Defendants would be entitled to qualified immunity in any event because Hodges-Johnson cannot plead a violation of her clearly established rights.

### b.    Plaintiff Johnson

Plaintiff Johnson is differently situated. His claim for seizure in an unreasonable manner is based on the allegations that he was detained outside, in plain view of his neighborhood, while fully nude. Johnson alleges that the officers repeatedly denied his request for clothing. The question is therefore whether this violated his clearly established Fourth Amendment rights. Plaintiffs assert there was no legitimate law enforcement purpose for requiring Johnson to remain in this state.[50] The Lilburn Defendants concede that Johnson had a right to bodily privacy, but contend they "were not required by the Constitution to find him clothing before they secured the home."[51] They suggest they were entitled to leave Johnson

---

[50]   ECF 22, at 14.

[51]   ECF 14-1, at 10.

this way while the house was being searched, relying in part on *Rettele*, 550 U.S. 609.[52]

In *Rettele*, the defendant officers executed a search warrant on the house in which the plaintiffs resided. When officers entered, two of the plaintiffs were ordered at gunpoint to get out of bed, despite the fact that neither was clothed. These plaintiffs were made to stand in the bedroom naked for a few minutes before being allowed to put on clothing. The Supreme Court held that the plaintiffs' constitutional rights had not been violated because their short detention while naked was objectively reasonable. This is a far cry from what Johnson alleges happened here. The plaintiffs in *Rettele* were never exposed to the public during their detention and remained in the bedroom.

By contrast, in *Mitchell*, the Eleventh Circuit upheld the denial of qualified immunity to officers who detained the plaintiffs in their home and then transported them to jail while only partially clothed with their genitalia exposed. "[I]f a prison guard must have a legitimate reason for impinging an inmate's right to bodily privacy, then an arresting officer certainly must have a legitimate reason for violating the bodily privacy rights of an arrestee." 608 F. App'x at 735. Johnson

---

[52] *See generally id.* at 9–14.

has therefore sufficiently alleged a violation of a constitutional right that was clearly established at the time of his seizure: his right to bodily privacy and unreasonable exposure of his genitalia to onlookers.

"In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Rettele*, 550 U.S. at 614. Whether the action is reasonable is measured by an objective standard. *Id.* A prolonged detention or special circumstances can make the search unreasonable. *Id.* at 615. Johnson has alleged both here—that his detention was far longer than necessary and that forcing him to remain naked during that time was demeaning, embarrassing, and humiliating.[53] Whether Defendants had a legitimate, objectively reasonable basis to detain Johnson in this fashion involves disputed facts that are not subject to resolution on a motion to dismiss. "[A]n initially constitutional seizure can become unconstitutional where it is executed in an extraordinary manner, thereby subjecting the officer's conduct to a balancing analysis. While usually evaluated in the context of excessive force, that is not the only way that an otherwise authorized seizure might be conducted in such an

---

[53]   *See, e.g.*, ECF 1, ¶¶ 39–40, 47.

extraordinary manner so as to constitute a constitutional violation." *May v. City of Nahunta, Ga.*, 846 F.3d 1320, 1330 (11th Cir. 2017).

The Lilburn Defendants are not, at this stage, entitled to qualified immunity with regard to Plaintiff Johnson's claim that he was seized in an unreasonable manner.

### C.    State law claims

#### 1.    The Court lacks jurisdiction over Plaintiff Hodges-Johnson's state-law claims.

The Plaintiffs base jurisdiction on 28 U.S.C. § 1331 for their Section 1983 claims, and invoke the Court's supplemental jurisdiction for their state-law claims.[54] Because Hodges-Johnson's federal claims are dismissed with prejudice, the Court does not have subject matter jurisdiction over her state-law claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Since federal question jurisdiction is dependent on a viable federal cause of action, there is no basis for the Court to exercise supplemental

---

[54]   ECF 1, ¶ 7.

jurisdiction over Hodges-Johnson's state-law claims. They are therefore **DISMISSED WITHOUT PREJUDICE**.

### 2. Official immunity

The Lilburn Defendants assert that they are entitled to official immunity from Johnson's state-law claims.[55] As noted above, the Suwanee Defendants have not yet raised immunity defenses.[56]

The Georgia Constitution provides for official immunity, protecting state employees from liability caused in the performance of their jobs. GA. CONST. art. I, § 2, ¶ IX(d). But officers "can be liable for the negligent performance of ministerial acts within the scope of their authority [as well as] discretionary acts [if] committed with actual malice." *Marshall v. McIntosh Cnty.*, 327 Ga. App. 416, 420 (2014). *See also Kidd v. Coates*, 271 Ga. 33, 33 (1999) (noting the Georgia Constitution provides for official immunity unless discretionary acts are performed with "actual malice or with actual intent to cause injury in the performance of their official functions") (quoting GA. CONST. of 1983, art. I, § 2, ¶ IX(d)[57]).

---

[55] ECF 14-1, at 14–16.

[56] ECF 17-1, at 7–8.

[57] This provision remains the same in the current Georgia Constitution.

### *i.* **Actual malice**

The parties agree that Johnson's detention during the warrant execution was a discretionary act.[58] Accordingly, the only dispute is whether the Complaint sufficiently pleads that Defendants acted with actual malice. The Georgia Supreme Court has explained that "[a]ctual malice . . . denotes express malice, i.e., a deliberate intention to do wrong, and does not include implied malice, i.e., the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) (quoting *Merrow v. Hawkins*, 266 Ga. 390, 391–92 (1996)) (cleaned up). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." *Id.* It requires "more than harboring bad feelings or ill will about another; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (cleaned up). Similarly, an "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive." *Id.* (quoting *Kidd*, 271 Ga. at 33).

---

[58]   ECF 14-1, at 15 (Lilburn Defs.' Mot.); ECF 22, at 15 (Opp. Br.).

While allegations of malice and intent can be pleaded generally, Fed. R. Civ.

P. 9(b), the pleading must still contain sufficient facts to make its claims plausible

under Rule 8.

> Rule 9 merely excuses a party from pleading
> discriminatory intent under an elevated pleading
> standard. It does not give him license to evade the less
> rigid—though still operative—strictures of Rule 8. And
> Rule 8 does not empower respondent to plead the bare
> elements of his cause of action, affix the label "general
> allegation," and expect his complaint to survive a motion
> to dismiss.

*Iqbal*, 556 U.S. at 686–87 (citation omitted). *Cf. also Grumet v. Prof. Account Mgmt.,*

*LLC*, Civ. A. No. 1:13-cv-1019-RLV-GGB, 2013 WL 12382693, at *14 (Dec. 18, 2013)

(considering defamation claim; "Plaintiff has failed to set forth sufficient facts that

would make it plausible that Defendants communicated to the consumer

reporting agencies false or misleading information with actual malice"), *report and*

*recommendation adopted at* 2014 WL 12859841 (N.D. Ga. Feb. 4, 2014).

Johnson generally alleges that Defendants waived official immunity

because they "acted with malice and the specific intent to cause harm."[59] But

Johnson did not plead facts that make his general allegations of malice plausible.

Nor does the Complaint contain sufficient factual allegations to suggest that any

---

[59]   ECF 22, at 16–17 (citing ECF 1, ¶¶ 69, 74).

particular Defendant (much less the Lilburn Defendants as a group) acted with a deliberate intent to harm Johnson, rather than having acted to execute the warrant safely and effectively. Accordingly, as currently pleaded, the Lilburn Defendants are entitled to official immunity from the state-law claims in Johnson's Third, Fourth, and Fifth Causes of Action.

## IV.  Conclusion

Defendants' motions to dismiss are **GRANTED** [ECF 14; ECF 17]. Plaintiff Hodges-Johnson's First and Second Causes of Action are **DISMISSED WITH PREJUDICE**. As a result, Hodges-Johnson's Sixth Cause of Action must also be **DISMISSED WITH PREJUDICE**. Because the Court does not have subject matter jurisdiction over Hodges-Johnson's remaining state-law claims, they are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff Johnson's First Cause of Action is **DISMISSED WITH PREJUDICE**. Johnson's Second Cause of Action is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. As a result, his Sixth Cause of Action must also be **DISMISSED WITHOUT PREJUDICE**. Because the Court does not have subject matter jurisdiction over Johnson's remaining state-law claims, they are **DISMISSED WITHOUT PREJUDICE**.

Within 14 days after entry of this Order, Johnson may amend his Complaint consistent with the Court's rulings. Specifically, Johnson may amend his Second Cause of Action with particularized allegations against each individual Defendant, and reassert his Sixth Cause of Action. Johnson may also replead his state-law claims (the Third, Fourth, and Fifth Causes of Action) and assert facts supporting allegations of malice.

**SO ORDERED** this the 29th day of September 2021.

Steven D. Grimberg
United States District Court Judge