## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CHRISTOPHER JOHNSON,

    Plaintiff,

             v.

CHANCE BELCHER,

    Defendant.

Civil Action No.
1:20-cv-03409-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [ECF 76] on the ground that he is entitled to qualified immunity. For the reasons set forth below, the motion is **GRANTED**.

## I.   BACKGROUND

### A.   Facts

The undisputed material facts, construed in the light most favorable to Plaintiff Christopher Johnson, are as follows. In 2019, Defendant Chance Belcher was a police officer employed by the Suwanee Police Department.[1] Belcher worked primarily in investigations, but he was also a member of a joint Special Response Team, which included officers employed by the Suwanee Police Department, the Lilburn Police Department, and the Duluth Police Department.[2] In August 2019, as part of an ongoing investigation, Belcher obtained a valid

---

[1]   ECF 79-2, ¶ 1.

[2]   *Id.* ¶ 2.

1

search warrant for Johnson's home in Suwanee, Georgia.[3] Due to the type of investigation, the size and nature of Johnson's residential property, and the nature of the evidence sought, Belcher decided to execute the search warrant with the assistance of the Special Response Team.[4]

Typically, the execution of a search warrant at a residential dwelling is conducted in two stages.[5] The first stage involves knocking and announcing at the home's entry (unless the officer has a no-knock warrant), then securing the property to ensure that all suspects or occupants have been located and detained so as not to be a threat to the officers conducting the search or destroy or conceal evidence.[6] During the second stage, detectives or other investigators conduct the actual search for evidence and any witness interviews or suspect interrogations.[7]

Early in the morning of October 21, 2019, Belcher and other members of the Special Response Team, joined by investigators from the Gwinnett County District Attorney's Office, executed the search warrant at Johnson's home.[8] Belcher was

---

[3]   *Id.* ¶ 3.

[4]   *Id.* ¶ 4.

[5]   *Id.* ¶ 5.

[6]   *Id.*

[7]   *Id.* ¶ 6.

[8]   *Id.* ¶ 10.

initially positioned with other officers around the perimeter of the home, while the incident commander knocked and announced.[9]

The incident commander was responsible for securing anyone who answered the door.[10] Johnson answered the door, and he was fully nude.[11] Shortly thereafter, one of the officers who had made contact with Johnson directed him to move to the side of the garage and handcuffed him.[12] Belcher heard an officer announce that nobody was left inside of the home.[13] Belcher was not one of the officers who directed Johnson to the side of the garage, nor was he the one who handcuffed him.[14]

Belcher was assigned to a line of officers (called a "stack") charged with entering and securing the home.[15] Shortly after Johnson stepped to the side of the garage, the entry stack received the order to go in through the garage door.[16] At that point, Belcher made his way from his initial position on the perimeter to the

---

[9]   *Id.* ¶ 12.

[10]   *Id.* ¶ 13.

[11]   *Id.* ¶ 19.

[12]   *Id.*

[13]   *Id.* ¶ 18.

[14]   *Id.* ¶ 20.

[15]   *Id.* ¶ 12.

[16]   *Id.* ¶ 22.

garage to join the stack.[17] Belcher entered Johnson's home with the entry stack and remained inside until they had completed the protective sweep.[18] After Johnson was handcuffed, and while Belcher was inside the home with the entry team, an officer stood with Johnson (who was still nude), offered to move Johnson to keep him out of the light, and promised to get Johnson clothes once the home had been cleared by the entry team.[19] Johnson asserts that he was "paraded naked in front of the entire search team including at least two females," but Belcher was still inside the house at the point Johnson contends this occurred.[20] At some point thereafter, officers took Johnson to stand at the front of the house.[21] By then, Johnson was covered by a large blanket, which he had draped over himself like a toga.[22] His genitals were not exposed.[23]

---

[17] *Id.* ¶¶ 23–24.

[18] *Id.* ¶ 25.

[19] *Id.* ¶¶ 26–27.

[20] *Id.*

[21] *Id.* ¶¶ 27–28.

[22] ECF 39, Exh. 5 (BlackBWC1) (starting at approximately 6:10 minutes into the recording and continuing to the end). Because the parties dispute the synchronization of the time-of-day stamps between the various body worn cameras, ECF 79, at 5–7, the Court refers to the time as indicated by the length of the recording itself. Johnson does not dispute the authenticity of the footage.

[23] *Id.*

After completing the protective sweep of the house, Belcher went outside and began to speak with Johnson and his wife.[24] Johnson was still covered with the blanket.[25] The men walked toward the garage, and Belcher informed Johnson that officers would get him some clothes as soon as the search had been completed.[26] Once they were inside the garage, Belcher began to question Johnson.[27] Johnson avers in his declaration opposing summary judgment that he was still nude at this point,[28] but his response to Belcher's statement of undisputed material facts admits that he was covered with the blanket.[29] Moreover, about three minutes into Belcher's body camera footage, it clearly shows clothes being brought to Johnson in the garage and Johnson placing a blanket on top of a car in the garage after putting on the shirt and just before putting on the pants that had been brought to him.[30] The undisputed evidence therefore shows that Johnson at the very least had something with which to cover his genitals when Belcher began

---

[24]  ECF 79-2, ¶¶ 30–32.

[25]  *Id.* ¶ 31.

[26]  *Id.* ¶¶ 32–33; ECF 39, Exh. 2 (BelcherBWC2) (starting at the beginning of the recording).

[27]  *See generally* ECF 39, Exh. 2 (BelcherBWC2).

[28]  ECF 79-1, ¶ 12.

[29]  ECF 79-2, ¶ 31.

[30]  ECF 39, Exh. 2 (Belcher BWC2) (from approximately 2:54 to 4:30 minutes into the footage).

the interview after completing the protective sweep, and the Court construes Johnson's reference to being "naked" as meaning without clothes rather than without any form of covering.

### B.    Procedural History

In August 2020, Johnson filed suit against Belcher and eleven other officers,[31] asserting causes of action (1) under 42 U.S.C. § 1983 for violations of the Fourth Amendment; (2) under state law for assault, battery, and false imprisonment; (3) under state law for invasion of privacy; (4) under the Georgia Constitution for the right to be free from unreasonable searches and seizures; and (5) under 42 U.S.C. § 1988 for attorneys' fees and expenses of litigation.[32]

In October 2020, the Lilburn Defendants filed a motion to dismiss or for a more definite statement.[33] Around the same time, Belcher (along with the other Suwanee Defendants) filed a separate motion to dismiss.[34] The Court dismissed all of Johnson's claims on the ground that Johnson's Complaint did not satisfy the necessary pleading standards: The factual allegations in the Complaint did not tie

---

[31]    The other named defendants were five Lilburn Police Officers (the Lilburn Defendants) and six Suwanee Police Officers (the Suwanee Defendants).

[32]    ECF 1.

[33]    ECF 14.

[34]    ECF 17.

any individual Defendant to the alleged violations.[35] However, the Court gave Johnson leave to amend, directing him to cure the deficiencies in his pleading by adding particularized allegations against each individual Defendant.[36]

In October 2021, Johnson filed his Amended Complaint, alleging facts that were virtually identical to those in Johnson's original pleading, including allegations related to causes of action that the Court had already dismissed.[37] Nor did Johnson cure the problems the Court had identified in the original Complaint. Rather, Johnson named Belcher and fifteen John and Jane Does as Defendants.[38] The Amended Complaint alleged that Belcher detained and questioned Johnson,[39] but did not identify any other person involved in this detention.[40] Johnson instead contended that the identities of those officers were "presently unknown" but that they were all "white male persons dressed in Suwanee or Lilburn Police

---

[35]   ECF 32, at 11, 29.

[36]   *Id.* at 30.

[37]   For instance, the Court dismissed with prejudice § 1983 claims by Johnson's wife against the Lilburn Defendants based on qualified immunity and her state-law claims for lack of jurisdiction. ECF 32, at 21–22, 25–26, 29. Despite this, the Amended Complaint repeated the allegations about her seizure. *Compare* ECF 34, ¶¶ 28, 32–33, 41–45 *with* ECF 1, ¶¶ 29, 33–35, 42–46.

[38]   ECF 34, at 1.

[39]   The parties now agree that Belcher did not detain Johnson. ECF 79-2, ¶ 21.

[40]   ECF 34, at 1.

uniforms."[41]  The Court held that Johnson could not pursue claims against the Doe Defendants because nothing in the Amended Complaint alleged how every officer involved in the warrant execution allegedly violated Johnson's rights—regardless of Johnson's ability to provide the proper name of each officer.[42] The Court dismissed all of Johnson's claims except as to Belcher for the § 1983 claim based on the alleged unreasonable manner of Johnson's seizure and corresponding § 1988 claim for attorneys' fees.[43]

In August 2023—after discovery had closed, been reopened, and closed again—Johnson filed a motion seeking leave to file a second amended complaint to add parties.[44] The Court denied Johnson's motion for leave on the ground that Johnson had failed to demonstrate the diligence required by Fed. R. Civ. P. 16.[45]

At this stage, then, all that remains are Johnson's § 1983 claim against Belcher in his individual capacity based on the manner of Johnson's seizure and the corresponding claim for attorneys' fees and costs of litigation under § 1988. In

---

[41]   *Id.* ¶¶ 16, 26.

[42]   ECF 50, at 14.

[43]   *Id.* at 15.

[44]   ECF 68.

[45]   ECF 75.

February 2024, Belcher moved for summary judgment on the ground that he is entitled to qualified immunity.[46]

## II.   Legal Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Id.* "Factual disputes that are irrelevant or unnecessary" are not material. *Id.*

The court must resolve all reasonable doubts in the favor of the nonmoving party for purposes of summary judgment. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Anderson*, 477 U.S. at 255; *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

---

[46]   ECF 76-1.

### III.   ANALYSIS

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be entitled to qualified immunity, the official must have been engaged in a "discretionary function" when performing the acts of which the plaintiff complains. *Harlow*, 457 U.S. at 818.

 "Once the [government employee] establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). An official is not entitled to qualified immunity when his actions (1) violated a constitutional right; and (2) "the unlawfulness of [the official's] conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). If the plaintiff prevails on both prongs of this test, then the official is not entitled to qualified immunity.

Here, the parties agree that Belcher's actions were discretionary. And for purposes of this motion only, the Court assumes without deciding that Johnson's detention while naked violated his Fourth Amendment rights. *Pearson*, 555 U.S. at

236 (district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first). The remaining issue, then, is whether it was *clearly established* at the time the warrant was executed that Belcher's conduct violated Johnson's statutory or constitutional rights. To this point, Johnson asserts two alternate reasons for why he claims Belcher is not entitled to qualified immunity. First, Johnson alleges that Belcher himself violated Johnson's right to bodily privacy.[47] Second, Johnson alleges that Belcher is liable for the other officers' conduct by virtue of Belcher's alleged supervisory role in the execution of the search warrant.[48]

### A.   Belcher's Liability for His Own Conduct

As an initial matter, Johnson bears the burden of showing that it was clearly established at the time that Belcher's conduct violated Johnson's Fourth Amendment right to bodily privacy. *Wesby*, 583 U.S. at 63. For the reasons that follow, undersigned finds that Johnson has not met his burden.

For a right to be clearly established, the contours of the right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). To determine whether an

---

[47]   ECF 79, at 10–12.

[48]   *Id.* at 14–17.

official understood that his conduct violated a constitutional right, the question is whether the law "at the time of [the] incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (cleaned up). Further, clearly established law cannot be defined at a high level of generality; rather, it "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)).

The Eleventh Circuit has recognized three ways to show that a right was clearly established: (1) the plaintiff can point "to a materially similar case decided by the Supreme Court," the Eleventh Circuit, or the Supreme Court of Georgia; (2) the plaintiff can show that a constitutional right was clearly established through a "broader, clearly established principle that should control the novel facts of the situation," provided that the principle is "established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct" violated federal law; or (3) the "words of the pertinent . . . federal constitutional provision" can be "specific enough to establish clearly the law applicable to particular conduct and

circumstances and to overcome qualified immunity, even in the total absence of case law." *Terrell v. Smith*, 668 F.3d 1244, 1256–57 (11th Cir. 2012) (cleaned up) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).

The third option is not applicable here, and it is unclear whether Johnson is relying on the first or second option in opposing Belcher's motion. The Court therefore discusses both.

### 1.    Materially Similar Case

Johnson could meet his burden of showing that the law was clearly established by pointing to a materially similar case decided by the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. *Terrell*, 668 F.3d at 1256. Because Belcher is now the only named defendant and is being sued in his individual capacity, Johnson must show that it was clearly established that Belcher had a duty to intervene when he witnessed a possible violation by other officers of Johnson's right to bodily privacy.

Construing the facts most favorably to Johnson, Belcher was a member of the entry team that completed the protective sweep inside the home. Belcher contends that Johnson was completely nude for roughly five minutes, while Johnson claims he was nude for nearly twenty minutes. In considering this motion, undersigned assumes without deciding, that: Johnson was nude for approximately twenty minutes during the execution of the warrant; and Belcher

heard Johnson's plea to put on clothes at some point during the execution of the warrant. However, Belcher himself did not initially detain Johnson, nor was he one of the officers who directed Johnson to the side of the garage or front of the home. Belcher did not wait with Johnson during the protective sweep; in fact, Belcher was inside the home conducting the protective sweep with the entry team. Belcher interviewed Johnson after the home had been secured, at a point when Johnson had been given a blanket with which to cover himself, and the two men were inside the garage. Johnson was given clothes to put on within three minutes after he and Belcher entered the garage.

Johnson has failed to show that it was clearly established that Belcher's failure to intervene violated the Fourth Amendment because Johnson has not pointed to any case—let alone a case with materially similar facts—recognizing an officer's duty to intervene when his fellow officers allegedly violated a detainee's right to bodily privacy. *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998), *abrogated in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002) (plaintiffs "can point to no case recognizing such a duty on materially similar facts to those underlying this case"). Put another way, even assuming the officers who actually detained Johnson violated his Fourth Amendment right, Johnson has not pointed to (and this Court is not aware of) any case suggesting that a reasonable officer in Belcher's position would have known that he had a duty to intervene.

14

### 2.    Broad-Principle Approach

In his brief opposing summary judgment, Johnson argues that, when the search warrant was executed, there was "a broad, clearly established principle that individuals who have been placed in police custody have a constitutional right to bodily privacy."[49] Johnson relies on *Mitchell v. Stewart*, 608 F. App'x 730 (11th Cir. 2015), *May v. City of Nahunta, Ga.*, 846 F.3d 1320 (11th Cir. 2017), and *Fortner v. Thomas*, 983 F.2d 1024 (11th Cir. 1993), in an attempt to show that his broad right to bodily privacy was so well-established that the contours of that right were definite enough "that any reasonable official in [Belcher's] shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 779.

Undersigned agrees with the broad principle that those in police custody have a constitutional right to bodily privacy. However, for qualified immunity purposes, the Supreme Court has repeatedly directed lower courts not to "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 779 (quoting *al-Kidd*, 563 U.S. at 742). Further, the Eleventh Circuit has made clear that, under the broad-principle approach, "the unlawfulness of the conduct must be apparent from pre-existing law," *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc), and district

---

[49]    *Id.* at 10 (quoting *Mitchell*, 608 F. App'x at 735).

courts must "conduct that inquiry based on 'the specific context of the case,' not based on a 'broad general proposition.'" *Gilmore v. Ga. Dep't of Corr.*, 111 F.4th 1118, 1133 (11th Cir. 2024) (quoting *Coffin*, 642 F.3d at 1013). "To that end, where 'case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" *Gilmore*, 111 F.4th at 1133 (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)). The problem with Johnson's broad-principle approach is that the existence of a right to bodily privacy while in police custody would not put every reasonable officer in Belcher's particular situation on notice that he had a duty to intervene.

In *Mitchell*, the Eleventh Circuit held that the plaintiff's Fourth Amendment right to bodily privacy was clearly established at the time of the incident in question and that a reasonable jury could find that the defendants violated that right. 608 F. App'x at 735. The plaintiffs there alleged that the defendant police officers "entered and searched [their] home, arrested them without probable cause, and transported them to the jail with their genitalia exposed." *Id.* at 731 (cleaned up). However, unlike Belcher, the defendants in *Mitchell* were the officers who themselves detained the plaintiffs and transported them with their genitalia exposed. *Mitchell* says nothing about the duty of non-custodial officers to intervene in the acts of other officers to ensure that the person being detained is sufficiently clothed.

Similarly, in *May*, the officer who seized the plaintiff and directed her to change in front of him was the defendant. Not so here. Johnson's position is that Belcher had a duty to intervene in his detention by *other* officers because Belcher saw that Johnson was nude and heard his pleas to be able to put on clothes. That position requires a leap—specifically, that every reasonable officer would have known he had a duty to cover Johnson up during the protective sweep and search of the home—that is unsupported by any of the case law on which Johnson relies.

Finally, Johnson's reliance on *Fortner*, 983 F. 2d at 1026, in which the Eleventh Circuit recognized the existence of prisoners' rights to bodily privacy, is inapplicable. That case does not clearly establish that Johnson "had an equal or greater right to privacy" than a prisoner while detained during the execution of the warrant.[50]

*Gilmore* reinforces the requirement that the Court must determine whether the unlawfulness of Belcher's conduct was apparent from pre-existing law based on the specific context of the case. 111 F.4th at 1133. In *Gilmore*, the Eleventh Circuit granted summary judgment on qualified immunity grounds, reasoning that the existence of *prisoners'* rights to be free from suspicion-less strip searches did not clearly establish that *prison visitors* had a similar right. *Id.* (quotations omitted). The

---

[50]   ECF 79, at 12.

Eleventh Circuit explained that, even though it had required reasonable suspicion for strip searches of arrestees, students, and border entrants, "case law 'ha[d] not staked out a bright line' with respect to strip searches of prison visitors." *Id.* at 1134 (quoting *Smith*, 127 F.3d at 1419).

Based on the foregoing, neither *Mitchell*, *May*, nor *Fortner* draws a line bright enough to establish that every reasonable officer would have known he had a duty to cover Johnson up during the protective sweep and search of the home. Because Johnson has failed to show, via any of the routes recognized in the Eleventh Circuit, that Belcher is not entitled to qualified immunity for Belcher's failure to intervene, summary judgment in Belcher's favor is appropriate.

### B.   Supervisory Liability

Johnson alternatively asserts that Belcher is liable for the conduct of the officers who detained Johnson on account of Belcher's alleged supervisory role. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1994). Supervisory officials "are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of *respondeat superior* or vicarious liability.'" *Hartley by Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Rather, "[s]upervisors will be held individually liable only if (1) the

supervisor personally participates in the underlying violation; or (2) there is a causal connection between the actions of the supervisor and that violation." *Mann v. Taser Int'l Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009) (quotations omitted).

One way a plaintiff can establish the requisite causal connection in the Eleventh Circuit is to show that "a history of widespread abuse put[ ] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). However, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.*

Another way a plaintiff can establish the requisite causal connection is to show that the "supervisor's improper custom or policy . . . resulted in deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). "A plaintiff can also show that the *absence* of a policy led to a violation of constitutional rights." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019) (emphasis in original) (citing *Rivas*, 940 F.2d at 1495). Whether a plaintiff points to the existence or absence of a policy, to establish the requisite connection, he must point to "multiple incidents . . . or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (citing *Rivas*, 940 F.2d at 1495–96; *Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008)).

Finally, a plaintiff can establish the requisite causal connection by pointing to "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), *abrogated on other grounds by Randall v. Scott*, 610 F.3d 701, 707-10 (11th Cir. 2010).

While the parties agree that Belcher was a member of the Special Response Team, they disagree as to whether he was in charge of it.[51] Even assuming, *arguendo*, that Belcher was a supervisor for purposes of § 1983 liability, Johnson has failed to establish either that Belcher personally participated in the other officers' purported violation of Johnson's right to bodily privacy or that there is a sufficient causal connection between Belcher's conduct and said violation.

### 1.   Personal Participation

There is no evidence in the record that Belcher personally participated in the violation of Johnson's right to bodily privacy. Johnson argues that Belcher was "personally involved" in the violation because he supervised the search and authored the search plan,[52] but Belcher did not detain Johnson, nor did he wait

---

[51]   On one hand, Belcher asserts that he was not in operational command of the first stage of the warrant execution. On the other hand, Johnson asserts that Belcher was in operational command of the Special Response Team generally, relying on Belcher's deposition testimony that he co-authored the search plan and focused mainly on the "investigatory side." ECF 79-2, ¶ 11.

[52]   ECF 79, at 14.

with him while Johnson was naked and uncovered. It is not enough that Belcher authored the plan to execute the warrant, nor is it enough that he allegedly supervised the search of the home. These claims might be relevant to whether Belcher's conduct was *causally connected* to the alleged violation of Johnson's rights, but they do not support an inference that Belcher *personally participated* in that violation.

### 2. Causal Connection

Johnson fails to show the necessary causal connection for supervisory liability under § 1983. He does not point to any "obvious, flagrant, [and] rampant" widespread abuse that put Belcher on notice of the need to correct such abuse. *Brown*, 906 F.2d at 671. Nor does Johnson allege that Belcher instituted an "improper custom or policy" that "resulted in deliberate indifference to constitutional rights." *Rivas*, 940 F.2d at 1495. Johnson does contend that Belcher knew that the Suwannee Police Department lacked a specific policy for dealing with the nudity of a person taken into custody during the execution of a search warrant,[53] but Johnson does not point to any other incidents in which the absence of such a policy resulted in a constitutional violation. "A single incident of unconstitutional activity . . . does not, as a matter of law, state a claim against

---

[53]   *Id.* at 16 (citing ECF 66-1, Belcher Dep. at 78:1–8).

[an official] for supervisory liability." *Piazza*, 923 F.3d at 958 (internal quotations omitted).

Finally, Johnson does not offer any evidence supporting an inference that Belcher directed the other officers to violate Johnson's right to bodily privacy. Thus, because Johnson has failed to show that Belcher either personally participated in or that his conduct was causally connected to the alleged constitutional violation, Belcher is entitled to summary judgment on Johnson's claim for supervisory liability under § 1983.

## IV.    CONCLUSION

The Court **GRANTS** Belcher's Motion for Summary Judgment [ECF 76] on the ground that he is entitled to qualified immunity. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Belcher and to close the case.

**SO ORDERED** this 30th day of September, 2024.

Steven D. Grimberg
United States District Judge